**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **BRIAN WAYNE CHESSER,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-24-891-HE** |
| | ) | |
| **MICHAEL MILLER, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## REPORT AND RECOMMENDATION

Petitioner Brian Wayne Chesser, proceeding pro se, filed a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254 ("Petition") challenging his state court conviction and sentence in Case No. CF-2020-741, District Court of Cleveland County, Oklahoma. Doc. 1. United States District Judge Joe Heaton referred this matter to the undersigned Magistrate Judge for proposed findings and recommendations consistent with 28 U.S.C. § 636(b)(1)(B)-(C). Respondent filed a Response ("Response"), Doc. 16, and the state court record, Docs. 17, 18. Included in the state court record are the original record, Doc. 18-1; the trial transcript ("Tr."), Doc. 17-1; jury trial exhibits ("State's Ex."), Docs. 18-2, 19; and the sentencing transcript, Doc. 17-1.[1] Petitioner did not reply. For the reasons set forth below, the undersigned recommends that the Court deny the Petition.

## I. Underlying Facts and Relevant Procedural History

Petitioner was tried by jury in Cleveland County, Oklahoma, and convicted of first-degree manslaughter ("Count I") and leaving the scene of a fatality accident ("Count II").

[1] Page citations reference the Court's electronic case filing pagination.

Doc. 16-1 at 1. He was sentenced to nineteen years' imprisonment on Count I and ten years' imprisonment on Count II, to be served consecutively. *Id*. Petitioner filed a direct appeal with the Oklahoma Court of Criminal Appeals ("OCCA"), which affirmed his conviction and sentence on December 14, 2023. Docs. 16-1, 16-3.

On the night of March 21, 2020, Petitioner sent the following text: "don't forget when I say melt your off its because I've had 15 beers an[d] working on a apple rum when I smoke it." State's Ex. 24. Approximately three hours later, the Norman Police Department received a 911 call about a pedestrian-involved accident. Tr. at 444-45, 460-61. Officers observed the victim lying on the roadway with serious bodily injuries including disembowelment; the victim's internal organs were on the roadway. *Id.* at 461-62, 681. Law enforcement officers also observed debris from a red Ford F-150, resulting in a "be on the lookout" alert ("BOLO") issued for a vehicle matching this description with front-end damage. *Id.* at 463-64, 570.

The next morning, Officer Jamie Crowe located a vehicle matching the BOLO's description. *Id*. at 571. The truck was parked in front of a residence, and a teenager informed Officer Crowe that the truck belonged to his father who was not home. *Id.* at 574-75. Officer Crowe and two other officers returned to the residence later that day, and Officer Brian Billie saw Petitioner approach the back of the residence. *Id.* at 596-97. Petitioner cooperated with Officer Billie's directions to stop and come towards him. *Id*. at 598. Unprompted, Petitioner said that someone had the keys to his car, and that he had reported the car stolen to the Norman Police Department. *Id.* at 582, 598; State's Ex. 75 at 0:33-0:55, 1:21-1:30. Petitioner was *Mirandized* and taken in for questioning. Tr. at 582-

83; State's Ex. 75 at 1:39-2:29. En route to questioning, Petitioner stated "we have to catch the guy behind the wheel of the collision." Tr. at 600; State's Ex. 75 at 7:04-7:08.

During questioning, Petitioner admitted to driving his truck the night of the incident, colliding with something on the road, and failing to stop after the collision. State's Ex. 76 at 45:30-51:02. He stated he believed he hit a deer. *Id.* at 47:20-48:50. Petitioner sent a text message approximately 44 minutes after his first police interrogation, stating "some bum walked out in front of my truck on the highway, and I splatted him dead." State's Ex. 24 (citation modified). Officer Joshua Hard testified that the police never told Petitioner the victim was experiencing homelessness. Tr. at 746. Petitioner also admitted what he hit was black and gray. Tr. at 738. The victim was wearing dark clothing, including a black jacket. *Id.*

## II. <u>Petitioner's Claims</u>

Petitioner filed his Petition in this Court, asserting four grounds for relief. Pet. at 6-35. The Petition appears to be taken largely from his direct appeal and does not present arguments specific to the standards for habeas relief under 28 U.S.C § 2254(d). *Compare* Pet., *with* Doc. 16-3 (Petitioner's brief filed with the OCCA on direct appeal). The undersigned liberally construes Petitioner's grounds for relief because he proceeds pro se. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."). However, a court will not act as a petitioner's advocate. *Id.* Accordingly, the undersigned construes Petitioner's arguments to conform to § 2254 standards as appropriate.

Petitioner raises four grounds for relief:

- Ground One: The OCCA's decision—that the prosecution's filing of the general charge of first-degree manslaughter instead of the more specific charge of causing an accident without a valid driver's license did not violate Petitioner's due process rights—was contrary to or an unreasonable application of clearly established federal law.

- Ground Two: The OCCA's decision—that counsel's failure to (1) challenge two jurors for cause and (2) object to certain evidence did not constitute ineffective assistance under the Sixth Amendment—was contrary to or an unreasonable application of clearly established federal law.

- Ground Three: The OCCA's decision—that Petitioner's due process rights were not violated by admission of evidence that constituted other criminal acts and argument regarding that evidence—was contrary to or an unreasonable application of clearly established federal law.

- Ground Four: The OCCA's decision—that the accumulation of errors did not deprive Petitioner of a fair trial in violation of his due process rights—was contrary to or an unreasonable application of clearly established federal law and based on an unreasonable determination of fact.

## III. Standard of Review

### A. Limited merits review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") circumscribes the Court's review of claims that were adjudicated on the merits in state court proceedings. 28 U.S.C. § 2254; *Byrd v. Workman*, 645 F.3d 1159, 1165-67 (10th Cir. 2011). Where the state court adjudicated a claim on the merits, this Court may grant habeas relief only if Petitioner can establish that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of

the facts in light of the evidence presented in the State court proceeding." 28 U.S.C § 2254(d)(1)-(2). "It is the petitioner's burden to make this showing and it is a burden intentionally designed to be difficult to meet." *Owens v. Trammell*, 792 F.3d 1234, 1242 (10th Cir. 2015) (citation modified). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (citation modified). Review of a claim under § 2254(d) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

Clearly established federal law under § 2254(d)(1) refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 412-13. "It is not enough that the state court decided an issue contrary to a lower federal court's conception of how the rule should be applied; the state court decision must be 'diametrically different' and 'mutually opposed' to the Supreme Court decision itself." *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006) (quoting *Williams*, 529 U.S. at 406).

A decision is an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."

*Williams*, 529 U.S. at 413. A state court's application of federal law is unreasonable only if it was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. In other words, the state-court determination must have been so lacking that "*every* fairminded jurist" would "reach a different conclusion." *Brown v. Davenport*, 596 U.S. 118, 144 (2022).

**B. Exhaustion**

AEDPA codifies the exhaustion doctrine, which is a matter of comity and requires the Court to consider in the first instance whether Petitioner has presented his grounds for relief to the OCCA. 28 U.S.C. § 2254(b)(1); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991) ("The States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." (citation modified)). The doctrine provides that, aside from two narrow exceptions, habeas relief shall not be granted unless the remedies available in state court have been exhausted. Habeas relief may, however, be denied notwithstanding a failure to exhaust state court remedies. 28 U.S.C. § 2254(b)(2).

**C. Procedural bar**

In addition to the issue of exhaustion, a federal habeas court must also examine the state court's resolution of the presented claim. "It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman*, 501 U.S. at 729). This doctrine bars federal habeas relief "when a petitioner fails

to raise his federal claims in compliance with relevant state procedural rules, [as] the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review." *Id.* (citing *Coleman*, 501 U.S. at 731).

## IV. Analysis

### A. Ground One: Filing the first-degree manslaughter charge

In Ground One, Petitioner argues his due process rights were violated when he was prosecuted under "the general provision of misdemeanor manslaughter" rather than a more "specific provision of law." Pet. at 7-15. Specifically, Petitioner alleges he should have been prosecuted under Okla. Stat. tit. 47, § 11-905(C), which carries a maximum sentence of five years for causing an accident without a valid driver's license. Pet. at 7-8. In ruling on Petitioner's direct appeal, the OCCA (1) recited state law controlling a prosecutor's discretion and how the legislature can curtail the discretion and (2) concluded Okla. Stat. tit. 47, § 11-905 makes "it clear that the acts committed by [Petitioner are] not limited to prosecution under" that statute. Doc. 16-1 at 3-4.

#### 1. Exhaustion

Respondent argues this claim is unexhausted because Petitioner presented only state-law arguments to the OCCA, and now Petitioner presents the claim as a due process violation. Resp. at 18-20. In his direct appeal, however, Petitioner stated the prosecution's charge violated his "constitutional rights under the Due Process Clause of the United States Constitution." Doc. 16-3 at 20. Moreover, even if the Court were to determine Petitioner did not adequately present his claim to the OCCA, "an application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust

the remedies available in the courts of the state." 28 U.S.C. § 2254(b)(2) (citation modified). Here, the undersigned recommends denial of relief as to Ground One.

**2. Discussion**

**a. Reliance on state law**

Petitioner's allegation that the OCCA's reliance on Okla. Stat. tit. 47, § 11-905(D) conflicts with Okla. Stat. tit. 21, § 11 questions only the OCCA's application of state law. Petitioner does not cite any federal law supporting this allegation, but only urges a different interpretation of the state statute. Pet. at 9-10. "Whether a prosecutor must proceed under one statute rather than another is a matter of state law." *Haney v. Addison*, 275 F. App'x 802, 805 (10th Cir. 2008) (citation modified); *accord Hamburger v. Allbaugh*, No. CIV-13-921-F, 2016 WL 3675877, at *8 (W.D. Okla. May 24, 2016) (R&R), *adopted*, 2016 WL 3676794 (W.D. Okla. July 6, 2016). "Federal habeas corpus relief does not lie for errors of state law," and "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (citation modified). Federal habeas relief is not appropriate.

**b. Application of federal law**

Further, even assuming an error of state law, charging Petitioner with misdemeanor manslaughter does not warrant habeas relief. For a state law violation to constitute a denial of due process, "the deprivation occasioned by the state's failure to follow its own law must be 'arbitrary in the constitutional sense'; that is, it must shock the judicial conscience." *Aycox v. Lytle*, 196 F.3d 1174, 1180 (10th Cir. 1999) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 129-30 (1992)). "So long as the prosecutor has probable

cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file . . . generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) (citation modified). While a "prosecutor may be influenced by the penalties available upon conviction, [this alone] does not give rise to a violation of the . . . Due Process Clause." *United States v. Batchelder*, 442 U.S. 114, 125 (1979). The record reflects that the prosecution had probable cause to charge Petitioner with misdemeanor manslaughter.[2] Petitioner has not established that the OCCA's decision that he could be charged with misdemeanor manslaughter was contrary to or an unreasonable application of clearly established federal law.

While Petitioner relies on *Hicks v. Oklahoma*, 447 U.S. 343 (1980), the principle in *Hicks* is not triggered in his case. In *Hicks*, a statute used to impose a mandatory prison term for the petitioner was later declared unconstitutional by the OCCA. 447 U.S. at 344-45. The Court held that a defendant "has a substantial and legitimate expectation that he will be deprived of his liberty only to the extent determined by the jury in the exercise of its statutory discretion." *Id.* at 346. Because the statute imposing the mandatory sentence was later found unconstitutional, reliance on that statute was outside of the jury's statutory discretion, and the resulting "arbitrary disregard of the petitioner's right to liberty [was] a denial of due process." *Id.* Petitioner has not established the jury acted outside of its

[2] Petitioner does not argue that the charge was selected "based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Hayes*, 434 U.S. at 364 (citation modified).

statutory discretion or that the state arbitrarily disregarded his liberty right. Nor does Petitioner's reliance on *Hicks* otherwise establish a violation of due process.

### 3. Conclusion

Petitioner's Ground One fails because (1) federal habeas relief is not available for challenges related only to a state court's application of state law, and (2) he has not established the OCCA's decision was contrary to or an unreasonable application of clearly established federal law. The undersigned recommends that the Court deny relief as to Ground One.

## B. Ground Two: Ineffective assistance of counsel

In Ground Two, Petitioner alleges his trial counsel was ineffective for failing to (1) object to the admission of the text message he sent before the incident; (2) object to irrelevant testimony; and (3) challenge Juror T.R. and Potential Juror J.B. for cause. Pet. at 17-25. Respondent asserts the first two claims related to the text message and allegedly improper testimony are unexhausted and subject to an anticipatory procedural bar. Resp. at 26, 35. Respondent also argues all claims fail on the merits. *Id.* at 29-34, 36-49.

### 1. Unexhausted claims subject to an anticipatory procedural bar

To properly exhaust his claim, a petitioner must fairly present the claim to the state court. *Grant v. Royal*, 886 F.3d 874, 890 (10th Cir. 2018). "In order to be fairly presented, the state-court claim must be the 'substantial equivalent' of its federal habeas counterpart." *Id.* at 891 (citation modified) (quoting *Picard v. Connor*, 404 U.S. 270, 278 (1971)). A claim is not substantially equivalent when "in a significantly different and stronger posture than it was when the state courts considered it." *Id.* (citation modified). The focus and

alleged error identified by petitioner "cannot depart significantly" from what was presented to the state court. *Id.*

Though Petitioner raised before the OCCA other claims regarding his trial counsel's alleged ineffectiveness, he failed to raise his claims regarding counsel's alleged failure to object to (1) the admission of the text message, and (2) irrelevant testimony. *Compare* Pet. at 17-25, *with* Doc. 16-3 at 34-41. "The Petitioner bears the burden of proving either that state remedies were exhausted or that exhaustion would have been futile." *Fontenot v. Crow*, 4 F.4th 982, 1020 (10th Cir. 2021). Petitioner has not shown that he exhausted these claims or that exhaustion would have been futile. Therefore, these portions of Ground Two are unexhausted.

When a claim is unexhausted, a federal habeas court can apply an anticipatory procedural bar. An anticipatory procedural bar appropriately bars a federal habeas claim when the relevant state courts would now find the unexhausted claim procedurally barred. *Grant*, 886 F.3d at 892. Oklahoma law would procedurally bar Petitioner from now pursuing these subclaims in an application for post-conviction relief because (1) the filing limitations period has passed, and (2) he could have previously raised them. Okla. Stat. tit. 22, §§ 1080.1, 1086. Petitioner does not argue that he can overcome the procedural bar: he does not challenge the independence or adequacy of Oklahoma's rule nor does he allege cause and prejudice or a fundamental miscarriage of justice. *See Tryon v. Quick*, 81 F.4th 1110, 1139 (10th Cir. 2023) (noting methods to overcome a procedural bar). The unexhausted portions of Petitioner's ineffective assistance of counsel claim are subject to an anticipatory procedural bar.

**2. The exhausted jury selection claims fail on the merits**

Petitioner alleges his counsel was ineffective for failing to challenge Juror T.R. and Prospective Juror J.B. for cause. Pet. at 22-24. This was raised as Proposition V of his direct appeal. Doc. 16-3 at 34-41. The OCCA denied the proposition, determining the "jurors in question were statutorily qualified to serve" and Petitioner had "not met his burden to show that counsel was ineffective by selecting a jury that deprived him of a fair trial." Doc. 16-1 at 11.

**a. Clearly established federal law**

To succeed on his claim of ineffective assistance of counsel, Petitioner must satisfy the two-pronged standard of *Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner must show that his attorney's performance was both deficient and prejudicial—that is,

1) his attorney's performance fell "outside the wide range of professionally competent assistance" and

2) "counsel's errors were so serious" that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Id*. at 687, 690, 694. On habeas review, the Court must apply a "doubly deferential standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013) (citation modified). So "the pivotal question is whether the state court's application of the *Strickland* standard was unreasonable" or its decision contrary to *Strickland*, and not "whether defense counsel's performance fell below *Strickland*'s standard." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citation modified).

**b. Discussion**

**i. Juror T.R.**

Petitioner alleges Juror T.R. was "clearly sympathetic to the prosecution's objective" and counsel was ineffective for failing to question her to determine any prejudice against him. Pet. at 22. To prove juror bias, the petitioner "must show that the juror had such a fixed opinion that he or she could not judge impartially." *Hale v. Gibson*, 227 F.3d 1298, 1319 (10th Cir. 2000). Further, "an attorney's actions during voir dire are considered to be matters of trial strategy. A strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill chosen that it permeates the entire trial with obvious unfairness." *Id.* at 1317 (citation modified). Here, T.R. recounted that her cousin died from an accident caused by a driver under the influence and the driver received parole, but she also stated the driver "changed his life around from that. He's learned from it." Tr. at 272-73, 339. Further, T.R. stated she could be fair and impartial. *Id.* at 362-63.

Considering T.R.'s responses—including viewing parole as a positive outcome for the intoxicated driver who killed her family member, Petitioner has not shown how defense counsel's failure to further question T.R. resulted in the entire trial being permeated with obvious unfairness. *See Hale*, 227 F.3d at 1317. Not all reasonable minds reviewing the record would agree that the OCCA was wrong in deciding counsel was not ineffective for failing to challenge T.R. for cause or further question her. As such, Petitioner has not established the OCCA's decision was contrary to or an unreasonable application of *Strickland*.

**ii. Juror J.B.**

Petitioner alleges that while defense counsel did use a peremptory challenge to remove Potential Juror J.B., counsel's failure to have J.B. removed for cause constituted ineffective assistance of counsel. Petitioner's argument is flawed. First, Petitioner has failed to show that J.B. "had such a fixed opinion that he . . . could not judge impartially." *Hale*, 227 F.3d at 1319. J.B. was a retired law enforcement officer, but he had not worked directly with either of the prosecutors during his law enforcement career. Tr. at 239-40, 328-29. While he did initially indicate that he would "be more apt to lean" toward the prosecution's perspective, he also stated that he understood the burden of proof was on the government and he would hold them to that standard. *Id*. at 365-66. Second, "there is no freestanding constitutional right to peremptory challenges." *Rivera v. Illinois*, 556 U.S. 148, 157 (2009). So, losing a peremptory challenge by using it on J.B. did not per se violate Petitioner's constitutional rights. Instead, because J.B. did not sit on the jury, "any claim that the jury was not impartial . . . must focus not on [J.B.], but on the jurors who ultimately sat." *Ross v. Oklahoma*, 487 U.S. 81, 85-86 (1988). Petitioner does not argue that any impaneled jurors, other than T.R. discussed above, were legally inadequate.

Not all reasonable minds reviewing the record would agree that the OCCA was wrong in deciding counsel was not ineffective for failing to challenge J.B. for cause. As such, Petitioner has not established the OCCA's decision was contrary to or an unreasonable application of *Strickland*.

#### c. Conclusion on juror claims

The OCCA considered Petitioner's claims that his trial counsel was ineffective during jury selection and determined Petitioner had not established ineffectiveness under *Strickland*. Doc. 16-1 at 8-11. Petitioner has not demonstrated the OCCA's decision was contrary to or an unreasonable application of clearly established federal law.

### 3. Conclusion on Ground Two

Petitioner's Ground Two fails because (1) portions of the claim are subject to an anticipatory procedural bar, and (2) he has not established the OCCA's decision regarding ineffective assistance of counsel was contrary to or an unreasonable application of clearly established federal law. The Court should deny relief as to Ground Two.

## C. Ground Three: Evidence of other criminal acts

Ground Three relates to the text message Petitioner sent approximately three hours before the accident that indicated he was partaking in drugs and alcohol and later driving under the influence at the time of the accident. Pet. at 28-31. He urges that the text message was highly prejudicial and offered little probative value. *Id*. at 29.

Petitioner further argues the prosecution's reference in her closing argument to him driving under the influence was "prosecutorial misconduct" that violated his "14th Amendment right to a fair trial." *Id.*; *see also id.* at 31 (arguing because the trial court denied a mistrial on the issue, he was denied "the opportunity to have a fair trial, . . . [which is] a basic requirement of due process." (citation modified)); *id.* (arguing the prosecutor's reference to him driving under the influence during her closing argument was an "outright violation of Petitioner's due process").

**a. Exhaustion**

Respondent argues this claim is unexhausted because when presented in Proposition II of Petitioner's direct appeal it was based on a state-law violation, and now he presents the issue as a federal due process violation. Resp. at 49-51. With respect to admission of the text message, Petitioner raises the same claim before this Court that he raised on direct appeal: that the text message should not have been admitted. As discussed below, this is not a cognizable claim in federal habeas. Because Petitioner "alleges no deprivation of a federal right, § 2254 is simply inapplicable." *Engle v. Isaac*, 456 U.S. 107, 120 n.19 (1982). As such, exhaustion of this claim is unnecessary. *Id.*

With respect to the prosecution's closing argument, however, Petitioner presents this Court with a due process claim. And in Proposition III of his direct appeal, Petitioner argued he was denied a fair trial due to the prosecution's closing argument inferring he was driving under the influence. Doc. 16-3 at 28-31. The portion of Ground Three requiring exhaustion is exhausted.

**b. Clearly established federal law**

"Federal habeas review is not available to correct state law evidentiary errors; rather it is limited to violations of constitutional rights." *Smallwood v. Gibson*, 191 F.3d 1257, 1275 (10th Cir. 1999) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)).

Generally, "allegations of prosecutorial misconduct are reviewed under a due process analysis." *Stouffer v. Trammell*, 738 F.3d 1205, 1221 (10th Cir. 2013) (citation modified). The question is whether the prosecutor's actions or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly*

*v. DeChristoforo*, 416 U.S. 637, 643 (1974). "The ultimate question is whether the jury was able to fairly judge the evidence in light of the prosecutors' conduct." *Bland v. Sirmons*, 459 F.3d 999, 1024 (10th Cir. 2006). "Inquiry into fundamental fairness requires examination of the entire proceedings, including the strength of the evidence against the petitioner." *Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002) (citation modified).

**c. Discussion**

The OCCA denied Petitioner's claim based on the admissibility of the text message under Okla. Stat. tit. 12, § 2404(B), and because the prosecutor's "argument was properly based on the evidence." Doc. 16-1 at 4-7. Petitioner's text states "don't forget when I say melt your off its because I've had 15 beers an[d] working on a apple rum when I smoke it." State's Ex. 24. In closing, the prosecution referenced the text message and stated:

> Ladies and gentlemen, is that evidence that he was under the influence that night? You betcha. And that's the why. That's the willfulness of why he left the scene. Because he knows darn good and well that he's going to get in trouble. Because you know what? He is DUI. Under the influence of alcohol and drugs. You can reasonably infer that.

Tr. at 880.

**i. Text message**

The OCCA concluded evidence of the text message was "admissible to show [Petitioner] had a motive to leave the scene" and "was not mistaken in the fact that he left the scene after hitting a person, instead of a deer as he initially told police." Doc. 16-1 at 5-6. Though he asserts the prosecution's closing argument violated his due process rights to a fair trial, he does not present that argument regarding the text message. Instead, Petitioner's arguments for habeas relief center on debating the relevance of the text

message under state law. Pet. at 28-30. However, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67-68. Federal habeas relief is not appropriate for this claim.

**ii. Prosecution's closing argument**

Petitioner further claims that contrary to the OCCA's opinion, the prosecutor's closing statements infused the trial with unfairness because they (1) had no purpose other than to "create prejudice," (2) were a "misdirection" because no evidence corroborated the argument, and (3) were "the last thing the jury heard." Pet. at 30-31. However, the record does not support Petitioner's allegations.

First, in closing argument Petitioner's counsel contested the "willful" element of the charge for leaving the scene of a fatality by arguing Petitioner did not know he hit a person. Tr. at 861-83, 874-75. Counsel stated the government "knew they had to prove at the time of the accident that [Petitioner] knew that what he had hit was a person." *Id.* at 862. Counsel ended his closing stating "because if he didn't know if it was a person that he had hit, he could not have willfully left the scene of a fatality accident involving a person." *Id.* at 875 (citation modified). Petitioner argued that he thought he hit a deer or did not know what he hit. *Id.* at 863, 874-75.

A habeas court must consider a prosecutor's comments in light of the argument made by the defense, and "if the prosecutor's remarks were invited, and did no more than respond substantially in order to right the scale, such comments would not warrant reversing a conviction." *United States v. Young*, 470 U.S. 1, 12-13 (1985) (citation modified). Part of Petitioner's legal strategy was to place why he left the scene of the

accident directly at issue. It is reasonable to conclude the prosecution's argument was in response to Petitioner's argument—to explain that he left the scene of the accident to prevent law enforcement from assessing his intoxication near the time of the accident because he knew he hit a person while under the influence.

Second, evidence corroborated Petitioner's impairment at the time. He confessed that he left the scene because he was afraid responding officers would smell beer on his breath. State's Ex. 27, State's Ex. 76 at 2:39:00-2:39:12, 3:27:40-3:30:45, 3:34:40-3:36:30. While Petitioner claims the text message could be interpreted in ways other than as proof of his intoxication during the accident, his own admissions to police undercut this argument. It was not unreasonable for the OCCA to conclude the prosecutor's argument was based on the evidence.

Further, the judge instructed the jury on how to consider evidence tending to show offenses other than those charged. Tr. at 823. In closing argument, defense counsel reiterated that instruction and explicitly called out the text message at issue as such evidence and stated the prosecution "want[ed]" the jury to believe Petitioner was "drinking and driving" and "to think of [him] as a bad person, deserving of punishment." *Id.* at 857. Counsel further stated that "there's no evidence, zero evidence, that [Petitioner] was under the influence of any of those at the time of this incident." *Id.* at 858. The record reflects (1) the court instructed the jury on how to properly consider the evidence and (2) Petitioner's counsel challenged the text message's veracity and implications. It is reasonable to conclude the jury was equipped to fairly consider the evidence even if the prosecutor's argument was the last iteration of the issue heard before deliberations.

Finally, considering the evidence presented by the State at trial, the OCCA's conclusion that the prosecutor's remarks did not deprive Petitioner of a fair trial is reasonable. As such, Petitioner has not established the OCCA's decision was contrary to or an unreasonable application of clearly established federal law.

**d. Conclusion**

Petitioner's Ground Three fails because (1) federal habeas relief is not available for challenges related only to a state court's application of state law, and (2) he has not established the OCCA's decision was contrary to or an unreasonable application of clearly established federal law. The undersigned recommends that the Court deny relief as to Ground Three.

**D. Ground Four: Cumulative error**

In his final ground for relief, Petitioner argues that even if individual errors were harmless, the combined effect of the errors deprived him of a fair trial. Pet. at 33-35. Petitioner raised this claim on direct appeal, and the OCCA denied relief after concluding there were no errors warranting reversal or modification. Doc. 16-1 at 12.

The cumulative error analysis addresses the possibility that two or more individually harmless errors might have a "cumulative effect on the outcome of the trial . . . such that collectively they can no longer be determined to be harmless." *Workman v. Mullin*, 342 F.3d 1100, 1116 (10th Cir. 2003). To obtain habeas relief, a court must find that "the cumulative effect of the errors determined to be harmless had a 'substantial and injurious effect or influence in determining the jury's verdict.'" *Hanson v. Sherrod*, 797 F.3d 810, 852 (10th Cir. 2015) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). The

undersigned has not found error. Therefore, the cumulative error analysis is unwarranted. The Court should deny relief as to Ground Four.

## V. Recommendation and Notice of Right to Object

For the foregoing reasons, the undersigned recommends that the Court **DENY** the Petition. Doc. 1. The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed with the Clerk of Court **not later than September 15, 2026**. *See id.* § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to object timely waives the right to appellate review of the factual and legal issues addressed in this Report and Recommendation. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

**ENTERED** this 25th day of August, 2026.

Chris M. Stephens

CHRIS M. STEPHENS
UNITED STATES MAGISTRATE JUDGE